# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUTT

5    **Vincent Scott,**

**Plaintiff,**

**v.**

10

**U. S. HUD Secretary, Officially, IHA, Bud Meyers,
April Jackson, Ms. Jones, Doe, Roe and Unknown other
IHA, HUD employees, individually and officially,**

15        **Defendants.**

**Jury Demanded**

## VERIFIED COMPLAINT FOR DAMAGES
## [with amendment 6/13/2005]

20

### JURISDICTION

Jurisdiction of this court arises under 28 U.S.C. secs. 1331, 1337, 1343(a), and 1367(a); 42 U.S.C. secs. 1983, 1985, 1986, and 1988; 25   and 18 U.S.C. 24 and1961-1968 as well as The U. S. Supreme Court's Bivens Decision of 1971 which allows suits against federal agents for constitutional and other violations. Damages claimed exceed $100,000.

Jurisdiction of this court for the pendent claims is authorized by 30   F.R.Civ.P. 18(a), and arises under the doctrine of pendent jurisdiction as set forth in United Mine Workers v. Gibbs, 383 U.S. 715 (1966).

### PARTIES

Plaintiff Vincent Scott ["Scott" or "I"] is a natural person residing at 5868 E. 71st St., #131, Indianapolis, Indiana 46220 (mailing address), 35   United States of America; he was a resident of Indiana during all relevant times of this action.

1

Defendant City of Indianapolis, 200 E. Washington St, Indianapolis IN 46204, is a Municipal Corporation, organized under the laws of the State of Indiana. It is responsible for the policies, procedures, and practices implemented through its various agencies, agents,

5    departments, and employees, and for injury occasioned thereby. It was also the public employer of IHA Executive Director, Bud Meyers, Barton Towers Apartments Manager, April Jackson, Jones, Doe, Roe, et al, at all times relevant to this Complaint.

Defendant HUD Secretary, U. S. Housing and Urban Development, a

10   federal agency. It is responsible for the policies, procedures, and practices implemented through its various agencies, agents, contractors and contractees, departments, and employees, and for injury occasioned thereby. It was also the public employer of all HUD employee-defendants at all times relevant to this Complaint.

15   Defendant Bud Meyers, was Executive Director of the Indianapolis Housing Agency (IHA), (an agency of the aforesaid City of Indianapolis), at all times relevant to this Complaint. He is and has been responsible for the promulgation and implementation of agency policies, procedures, and practices at IHA. He is also responsible for

20   the management and supervision of all employees of the IHA.

Defendants Jackson, Jones, Doe, Roe and others not presently known to the plaintiff were, at all times material to this Complaint, duly appointed IHA managers of unknown rank and supervisors of defendants Jackson, Jones and others to be named.

25   Unnamed Defendant Doe, who is a natural person, was a resident of Indianapolis, Marion County, Indiana, United States of America, and a duly-appointed police officer in the IHA Police Department, at all times relevant to this Complaint. Defendant Doe acted in his capacity of IHA police officer to forcibly eject Scott from Scott's apartment in

30   the IHA-owned and operated housing complex known as Barton Towers Apartments at about 9:00 am June 2, 2004.

Plaintiff sues all public and federal government employees in their official and individual capacities.

At all times material to this Complaint, all municipal and federal

35   employees acted toward plaintiff under color of the statutes, ordinances, customs, and usage of the United States, State of

2

Indiana, City of Indianapolis, and the IHA.

Defendant Norman Reed, 120 E. Market St, Suite 719, Indianapolis IN 46204, is an attorney for IHA in the Marion County Superior Court
5    case, above, who is an as-yet unnamed co-conspirator.

Fact

Indianapolis, Indiana, is city of about 1,000,000. It is known variously as "The Crossroads of America", "Indianapolis, Inc." and just plain "Indy". While there is disagreement among some about the motto or
10   nickname, there is no disagreement among private and public components that everything that can be done should be done to maintain and increase the flow of federal dollars to the community.

Like many American cities, Indianapolis is encountering fiscal
15   challenges which the federal dollars are urgently employed in meeting.

Indianapolis maintains many civil functions. Among them is a public housing agency called IHA, which is subsidized by U. S. HUD.
20

From April, 2003 until June, 2004, I was a resident of the IHA property John Barton Towers Apartments, 555 Massachusetts Ave, Indianapolis Indiana, under a rental contract with IHA which provided "due process" guarantees and procedures as well as assurances of
25   security and accommodation for my person and property. I am a fifty-eight-year-old physically handicapped (mobility impaired) black man.

Shortly after moving into the IHA apartment, I noticed that my property had been invaded on more than one occasion and that it was not secure requiring me to install a deadbolt lock on the entrance
30   door.

After another unauthorized attempted entry by IHA personnel, IHA required me to provide them a key to the deadbolt. I provided the key with the understanding that for security reasons it was to be used only by management for emergency purposes. I also asked to be
35   transferred to another building under IHA management to provide better security due to threats I had received from persons that I was suing or had sued. IHA refused the transfer and continued to allow

the unauthorized invasions of my leasehold property, resulting in the theft of some of my personal property items and computer data compact disks.

I then filed a formal grievance concerning my security and other
5   matters, particularly my privacy regarding re-certification third party verification, which was denied by the IHA building manager, April Jackson. I appealed her decision and she and another IHA employee, Ms. Jones, decided the appeal against me. I asked for appeal of that decision because it was improper for Ms Jackson and Ms. Jones to
10  hear and appeal of their own decision and because the decisions did not conform to the facts and the law. Manager April Jackson then threatened me with eviction because I had not appeared personally at the 'appeal" hearing. I had called Ms. Jackson's office at the precise time the meeting was scheduled and spoken to Ms. Jackson. I had
15  then offered to conduct the hearing by telephone, based upon my written submissions, which she refused, though Ms. Jones had allowed appearance in writing.

I then pursued the matter with the Indianapolis HUD office and asked that HUD intervene due to the offenses of retaliation threats by IHA
20  and that HUD impose penalties, including, but not limited to, suspension of federal funding for IHA. HUD refused to intervene and referred me to the Indiana Civil Rights Commission (ICRC), which, HUD said, investigates discrimination complaints for HUD. I filed a complaint with ICRC who conducted an investigation, which
25  exceeded the statutory 100 days limit in duration, finally filing a report, which found no wrongdoing on IHA's part, despite compelling evidence to the contrary.

I also filed complaints with the HUD Inspector General and the HUD local (Indianapolis) and regional (Chicago) directors. I received no
30  response from the HUD local and regional directors. The HUD Inspector General declined to investigate my charges, though the law requires them to fully and fully investigate violations of fair housing and other civil rights laws.

My Notice of Tort Claim to the Indiana Attorney-general received a
35  response of "no interest" because IHA is not a state agency. The Attorney-general did not conduct an investigation of possible violations of law as he is required to do.

The ICRC finding was improper and unlawful because it was not grounded in either law or fact. It was, instead, calculated to prevent me from vindicating my civil and constitutional rights and to assure that IHA, a sister public agency, continued to receive federal funding in spite of serious demonstrated civil rights violations which bar IHA from receiving federal funds by federal statute. HUD accepted the report out of time, though it was by statute invalid. By doing so, HUD joined ICRC in conspiring with IHA to violating my civil and constitutional rights and to assure that IHA continues to unlawfully receive federal funds.

In the mean time, IHA filed a facially defective retaliatory "notice of claim" in the Marion County, Indiana, Small Claims Court (SCC) demanding repossession of my apartment. The notice of claim was defective because it not only failed to specify the amount of past due rent but also lacked the legally required affidavit verifying the truth of the allegations.

My rent (full market rate rent, not subsidized) was paid regularly until the Barton Towers Manager refused the rent in violation of Indiana statutes and instructed me to hold the rent in escrow until my grievances had been resolved. No further hearings on my grievances were allowed despite several written requests for appeal to upper IHA management and to HUD, though I was entitled to those recourses. That refusal was part of the scheme to evict me by alleging nonpayment of rent. IHA was negligently awarded possession of the apartment by default when I did not appear at the hearing due to lack of notice. I was not notified because, I believe, IHA had prevented me from receiving notice by constable. I was not notified of the action or of the hearing, so did not appear.

On Friday, May 28, 2004, about 5 pm, I receive notice by hand delivered letter from IHA Barton Towers Apartments Manager April Jackson that IHA had obtained a judgement and possession of the property and that I must move out immediately. That being a weekend of the Memorial Day Holiday, I was unable to contact the court or make arrangements to move. I wrote Ms. Jackson protesting the court order as improper and unlawful and slipped it under her office door. Tuesday morning, after the holiday, about 8:30, she

5

returned my unopened letter protesting the scheduled eviction and denied me time to seek an emergency order barring the ejectment until a hearing could be held. Indiana law provides (such orders.) Ms. Jackson showed by that act that she and IHA had no intention of my
5   having a court hearing.

The same morning, Tuesday, June 2, 2004, at 9 am, Ms. Jackson and an IHA police officer appeared at my apartment with moving men and forced me to leave my apartment. The movers packed my belongings and placed them in storage. I was ordered off the property
10   and banned from the premises of all IHA properties by the police officer, under Ms. Jackson's orders. See "Notice of Tort Claim", below, hereby incorporated herein.

In the Marion Superior Court, in Indianapolis, a hearing was held November 3, 2004, at which the court announced "on the record" that
15   another hearing would be held to award judgment to IHA and assess damages. I protested that I was entitled to a jury trial, as guaranteed by the Indiana Constitution and the U. S. Constitution as well as the opportunity to conduct discovery, call witnesses, etc. the court granted and enlargement of time to allow discovery. However, IHA
20   has refused to provide discovery under subpoena, so I sent IHA's attorney a demand, which he received but, again, refused to comply with. On the day after the demand to Mr. Reed was mailed, the court inexplicably changed its mind and ex parte or sua sponte without justification set hearing for March 8, 2005 for "one half hour." That is,
25   to set damages, while still denying me discovery, hearing on my counterclaims and setoffs, jury trial and a fair hearing.

I have filed  motions to compel IHA to produce discovery and to stay the hearing scheduled for March 8, 2004. I have also asked for an affidavit stating that the record of the November, 2004, hearing does
30   not exist and an explanation of why the judge ruled as he did in favor of IHA. However, it is unlikely that my motions will be granted. I am not required to continue to waste time and energy scaling a fruitless tree. [As of 5/9/05 the court had not ruled on my motions after reserving judgment at the 'hearing' a month earlier. At that hearing,
35   the IHA counsel stated that IHA was experiencing financial difficulties. On 5/16/05 the Indianapolis Star reported that the City of Indianapolis was $57,000,000 in arrears to the state of Indiana for housing of the city's juveniles and that the City had made only one payment to the

State in the past four years. The Star also reported that IHA's fraud investigation funding from HUD was withdrawn because of financial management problems at IHA.]

5  These acts are continuing acts and part of a series of misdeeds (pattern of conduct) by IHA and Barton Towers Management, HUD, ICRC, HUD and others, as noted above and below, which has existed for many months and which constitute the torts of mismanagement and breech of duty to properly conduct the affairs of a public agency without unfair discrimination, intimidation, extortion and breaches of
10  contract and privacy, among other offenses.

As a result of their **conspiratorial and unlawful and malicious conduct** I was deprived of both my liberty, without due process of law, and my right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth
15  Amendments of the Constitution of the United States, and, inter alia, 42 U.S.C. sec. 1983 and 18 U.S.C. sec. 241.

WHEREFORE, I demand judgment for the false complaint and ejectment under false pretenses and other offenses against all the Defendants jointly and severally, for actual, general, special,
20  compensatory damages in the amount of $500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of at least $100,000, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable, including compensation due
25  whistleblowers for witnessing to attempts to defraud the federal government.

I also request that the State of Indiana be ordered to either fund payment of the judgment in this case or that IHA and the City of Indianapolis invoke its authority to raise funds by statutory mandate
30  and that the judgment be paid within 180 days as the law of Indiana requires in this type case.

Please also grant 42 USC 1983 injunctive relief against the state court proceedings in Marion County, Indiana, which have been "stayed by refusal" of the court there to decide the case after many
35  weeks.

Please also order the U. S. Secretary of Housing and Urban Development to perform his lawful duties and appoint a debarment officer, conduct the debarment proceedings against Indianapolis Housing Agency and the Indiana Civil Rights Commission and any
5   persons or parties who might be due debarment for their misconduct or unfitness.

Please also adjudge and determine all other claims before deciding and awarding damages under the FTCA.

I reserve the right to further amend this complaint, as needed. See
10   Smith v. Wade, 461 U.S. 30, 50-51 ((1983) re punitive damages in this case.


Date 6/13/2005


15   Signature

Vincent Scott, pro se
5868 E. 71st St # 131
Indianapolis In 4622
20

## VERIFICATION OF COMPLAINT FOR DAMAGES

I state and affirm under penalty of perjury that this complaint is true to
the best of my knowledge and belief, that I have been personally
injured by the parties and acts complained of herein and that I am
entitled to the relief that I prayed.
Date 6/13/2005,

Signature

Vincent Scott, pro se
5868 E. 71st St # 131
Indianapolis In 46220

# IN THE U. S. DEPT. OF HOUSING AND URBAN DEVELOPMENT
## OFFICE OF THE SECRETARY
### 6/15/05

SCOTT, VINCENT,
     INFORMANT,

V.

INDIANAPOLIS HOUSING AGENCY (IHA),
     RESPONDENT.

## COMPLAINT OF MISCONDUCT

### Freedom of Information Act Request, inter alia.

Below is my original complaint of 3/29/05. I have heard nothing directly from your office to date, though the GAO did call me regarding a survey of housing complainants, which, they said, was ordered by Congress.

Please provide me the name of the debarment officer and a time line for proceedings to debar ICRC and IHA. Please also send me copies of your files on this matter to date and provide a time line for these proceedings and adjudication.

As I understand the law, ADA and civil rights violations as well as violations of HUD policies require debarment of ICRC, IHA and various officials and others who are liable for misconduct. Disciplinary action against HUD officials is required too. Bear in mind that conspiring to violate civil and constitutional rights and to unlawfully confiscate property and evict its lawful tenant is what the "anti-Ku-Klux-Klan" acts were all about (42 USC 1981, 1982, 1983, 1985, 1986 et al). Lawsuits intended to intimidate tenants from exercising their due process rights are regarded as unlawful retributions and you must seek 42 USC 1983 injunctions against them.

By its timing and IHA conduct, the eviction lawsuit and Federal Holiday wake physical ejection by IHA in Marion County Superior Court (a state court) CAUSE # 49D030407PL1326 was not only banned by IHA policy and rental contract but by HUD policy barring reprisals for complainant-tenants seeking redress and pending appeals, CFR regulations and many court decisions.  Please file your suit in equity via 42 USC 1983 to enjoin the Marion County, Indiana, Superior Court action. That court has 'reserved' judgment for many weeks now, and shows no signs of moving forward. In the meantime, IHA continues to wrongly cash HUD subsidy checks— which is why the court has not decided the case despite overwhelming evidence against IHA and its officials and others, including the court itself, which has repeatedly violated my due process and equal protection rights (see enclosed pleadings in that matter).

IHA has a long history of fraud, waste and abuse which has been condoned and fostered by both HUD and the State of Indiana. My complaints to the IHA fair housing officers and administrators and the HUD inspector general's office fell on deaf ears, as did my complaint to HUD directors in Chicago and Indianapolis (see enclosed emails). Recently, a task force commissioned to investigate fraud at IHA was disbanded for—you guessed it—fraud, waste and abuse.

That is, plainly IHA and HUD-Indianapolis are incompetent to treat this woeful illness, which is harming the IHA tenants, the community of Indianapolis and the American taxpayer. IHA has bargained and acted in bad faith with not just me but with everyone--except the parasitic contractors and administrators who thrive upon exploitation of the poor and those who provide cover for them.

I have also included a recent article from The Indianapolis Star newspaper of 6/11/05, which documents the ability of the governmental units concerned to make a way to pay for what they really want. What they want is more money to lavish on 'their' football team and guests. So, please do not be dissuaded from your duty by their deceitful pleas of poverty. If they have $500 (or 900) million dollars to build a new stadium for the Irsay family's Colts, they can pay me for the harm they have caused.

You should also find very interesting the former Marion County Sheriff's determination to continue receiving federal funds. He made a slight misstep in the case of one of his officers, Mark Wood, who refused to falsify crime statistics to be filed with the FBI as part of a long-running scheme to wrongly obtain federal funding for crime fighting activities. See the enclosed article from The Indianapolis Star newspaper of January 27, 2005.

None of the local 'crime fighters' are newspaper readers, it seems, since no official action has been taken to either investigate or prosecute *this* particular scheme to defraud the government, either. I am sure that they would have acted vigorously had they known all this was going on just below their veritable own noses (the stench of the county's filthy jail and the dysfunctional olfactory apparatuses and general insensitivity of the county bosses is yet another story--and yet another cause for disbarment of the county politicos and the jail or the jailing of the county politicos in their jail; see enclosed).

Wherefore: FRCP Rule 54(c) requires that you order all relief to which I am entitled, including, but not limited to, a 42 USC 1983 injunction. 24CFR 24.105 requires that you suspend respondents pending investigations. You should also apply govermentwide debarment via 24 CFR Parts 21 and 24 to Marion County, Indiana, the City of Indianapolis and the State of Indiana.

Please:

2

1.  suspend and debar IHA, ICRC, the Indiana Courts and the HUD officials who are responsible for the offenses complained of and order any other administrative relief provided by policy, law and equity.

2. also appoint a special prosecutor armed with budgetary and subpoena powers to investigate and prosecute the offenses I have outlined here. As well, provide me a copy of the reports of the investigations for my whistleblower lawsuit.

3. let me know if there is any reason that you cannot comply with this mandate, my FOIA request or my complaint demands.

Respectfully submitted,

Vincent Scott, pro se
5868 E. 71st St # 131
Indianapolis In 4622

3

# [Complaint of 3/29/05]

Below are documents detailing my complaint against Indianapolis Housing Agency (IHA), A HUD contractor, which violated my civil rights, my rights as a physically disabled tenant, IHA and HUD guidelines and other rules and both federal and state statutes.

As you can see, IHA has filed a lawsuit against me, which was both vindictive and unlawful. Their suit was filed after I had complained in writing and personally to Mary Ellen Burke and others at HUD offices in Indianapolis. HUD officials failed to conduct a full and fair investigation or to take action to prevent harm to me by IHA as they are required by law to do. HUD officials referred me, instead, to Indiana Civil Rights Commission (ICRC), who delayed the investigation beyond the statutory 100 days then issued an unsupported "fact Finding" which shielded IHA, a sister agency, as part of a scheme to prevent IHA from being deprived of federal funding due to documented IHA misconduct.
Because ICRC's findings were out of time, they are void.

This is a separate action concerning remedies unavailable to the Marion County, Indiana trial court.

This is also a whistleblower complaint. I am requesting that you investigate this matter, debar IHA and compensate me. You are required to conduct a full and fair investigation. Please do so.

Vincent Scott, pro se
5868 E. 71st St # 131
Indianapolis In 4622

4

## CERTIFICATE OF SERVICE AND VERIFICATION

I, Vincent J. Scott, pro se, affirm under penalty of perjury that this is true to the best of information and belief.

I WILL SERVE the HUD secretary by mail with proper postage attached within three days of today 3-29-05 his offices.

Vincent Scott, pro se
5868 E. 71st St # 131
Indianapolis In 4622

5

**By John Fritze**

john.fritze@indystar.com

A $48 million shortfall in the financing of the new Indianapolis Colts stadium has been plugged, increasing the likelihood of a summer groundbreaking, city and state leaders said Friday.

To cover the expense, which will be paid to the team to break the current lease, officials nearly cut in half a contingency fund that was supposed to be used for unforeseen construction problems with the stadium.

Shifting the money removed a roadblock that had threatened to delay the project and ended more than a week of public squabbling between the city and the state over who should pay the Colts.

"We're early in the project, but we would not have come up with this solution had we not been comfortable with it," said David Frick, chairman of the new Indiana Stadium and Convention Building Authority that is building the stadium. "I feel very good with the cooperative spirit that I saw."

Gov. Mitch Daniels and Sen. Luke Kenley, R-Noblesville, last week said the financing plan for the $900 million stadium and Convention Center project did not include the $48 million payment to the team. Because the payment will be used to break the team's lease with the city, the two state leaders argued it was the city's job to come up with the money.

Indianapolis Mayor Bart Peterson argued the payment became the state's responsibility in April when Daniels took control of the project's design, construction and financing.

Officials are facing a July 1 deadline to sign a lease with the Colts, secure tax increases to pay for the project and begin borrowing money for construction. Groundbreaking is scheduled for August, and the facility must open for the 2008 season.

**COMING UP**
Here's a quick look at what's next in the stadium saga:

• **Meeting:** The Indiana Stadium and Convention Building Authority will hold its next meeting at 3 p.m. June 28.

• **Taxes:** Marion and surrounding counties are still considering whether to increase their food and beverage taxes as part of the stadium and Convention Center financing plan. Only Hancock County has approved the tax to date.

• **Construction:** Barring any other snags, groundbreaking is set for August, with a completion target of 2008.

The July 1 deadline was threatened by the shortfall because without the $48 million payment, the Colts are not expected to sign a new lease. Colts officials could not be reached for comment Friday.

7

The new funding plan will cover most of the $48 million cost by reducing a contingency fund from $90 million to $50 million. Another $8 million will be tacked on to the overall cost of the project, which will be financed by a 30-year loan, backed by the state with new taxes on Marion County hotel rooms, car rentals and restaurant tabs.

Seven suburban counties also are expected to levy a 1 percent food and beverage tax and chip in about $5 million a year toward the project.

Construction on the stadium is expected to cost $500 million, but Frick said more money is included in that figure -- on top of the contingency fund -- for unexpected issues. When estimating costs, Frick said, officials have been careful to overestimate.

"What you'll find is, as the design develops . . . those numbers tend to go down," he said. "The original projection you put on a project -- you want to be safe."

Construction does not always go smoothly. The Indianapolis-Marion County Public Library, for instance, has recently struggled to pay to expand the Central Library branch Downtown.

The original $103 million price tag could go up because of concrete problems found on site last year. Library officials said they might have to borrow up to $30 million to cover costs associated with the delay.

Kenley drafted the legislation that set up the Colts funding plan. He said he thinks the stadium can be built with less contingency money, but that everyone should cross their fingers.

"It's tight," he said. "I think it's critically important that we not have any other surprises or overruns."

City and state leaders struck conciliatory tones Friday as they emerged from negotiations that have lasted several days.

"This makes a lot of sense, and it's a great step toward getting the project completed," said Melina Kennedy, the city's deputy mayor for economic development. "It's something we worked together to find."

**Call Star reporter John Fritze at (317) 444-2752.**

**http://www.indystar.com/apps/pbcs.dll/article?AID=/20050611/NEWS02/506110507&SearchID=732110 48999801**

**From:**    "vince scott" <scott7650@lycos.com>  Add to Address Book

**To:**    TOPMAN486@YAHOO.COM

**Date:**    Fri, 27 Aug 2004 17:50:40 -0500

**Subject:**    Fw: indianapolis housing authority DISCRIMINATION complaint/

```
----- Original Message -----
From: "vince scott" <scott7650@lycos.com>
Date: Sun, 30 May 2004 17:36:37 -0400
To: John_Hall@hud.gov
Subject: indianapolis housing authority DISCRIMINATION complaint/


--


Find what you are looking for with the Lycos Yellow Pages
http://r.lycos.com/r/yp_emailfooter/http://yellowpages.lycos.com/defaul
t.asp?SRC=lycos10
```

*Forwarded Message* [ Save to Yahoo! Briefcase | Download File ]

**To:**    John_Hall@hud.gov

**Date:**    Sun, 30 May 2004 17:36:37 -0400

**From:**    "vince scott" <scott7650@lycos.com>

**Subject:**    indianapolis housing authority DISCRIMINATION complaint/

*Plain Text Attachment* [ Download File | Save to Yahoo! Briefcase ]

```
vincent scott
mailing address
5868 e 71st st #131
indianapolis in 46220
tel 317-505-1138


5-30-04


mary ellen Burke
public housing facilities manager
u s dept of housing and urban defvelopment
```

9

indianapolis in
tel 317-226-6303

re Indianapolis Housing Authority(IHA)Discrimination Complaint; request
for civil rights investigation.

Dear Ms. Burke:

I telephoned and left a voice mail for you regarding the sudden adverse
turn of events in my action against IHA.

Yes, they did go ahead and obtain an order of repossession without
notifying me in advance or until well after the fact--the judgment was
obtained 5-18-04 and they sent me incomplete notice of the judgment
5-28-04--a holiday week-end--leaving me no opportunity to respond or
make
other living arrangements. Ms. April jackson says she will remove my
property from the apartment Tuesday 6-1-04.

i have attached a copy of my response to the eviction order issued
5-18-04 by the small claims court of center township, marion county,
indiana

Again, this is egregious abuse. please refer this matter to Department
of Justice and HUD civil rights officers and lawyers for investigation.
this is  arenewal of my request in person three weeks ago.

please forward to ms. beverly noble of your department, since she also
expressed interest in this case.

cc: john hall hud director

---

Find what you are looking for with the Lycos Yellow Pages
http://r.lycos.com/r/yp_emailfooter/http://yellowpages.lycos.com/defaul
t.asp?SRC=lycos10

## Deputy gets $250,000 award in lawsuit over his suspension

By John Tuohy
john.tuohy@indystar.com
January 27, 2005
 http://www.indystar.com/articles/5/212663-8365-009.html
A Marion County sheriff's deputy who sued over what he said was a politically motivated
suspension was awarded $250,000 by a federal court jury Wednesday night.

The seven-person jury deliberated for just under four hours before concluding that the four-day
suspension of Capt. Mark Wood in August 2002 was without merit.

Wood's lawsuit against the Sheriff's Department had sought compensation for pain and suffering
related to the suspension. Wood also wanted to recover about $973 in lost wages.

"I am very satisfied," Wood said after the verdict was read in U.S. District Court.

"It sends a message that the sheriff or elected officials can't retaliate against employees for doing
what is right."

Wood said that in 2002, he was pressured by then-Sheriff Jack Cottey to send the FBI faulty
numbers showing crime was down in Marion County.

Wood, who was then a lieutenant in charge of planning and research for the department, refused
to forward the statistics. He said the suspension was retaliation for his refusal.

He claimed Cottey hoped that reporting low crime levels would help his political ally, Republican
Tom Schneider, who was trying to succeed him as sheriff.

Schneider went on to lose the election to Frank Anderson, a Democrat.

The three-day trial was held before U.S. District Judge Richard L. Young in the Birch Bayh
Federal Building and U.S. Courthouse in Downtown Indianapolis.

Sheriff Anderson issued a written statement after the verdict, which was returned about 9:30 p.m.

In the statement, Anderson said he was not sheriff when the lawsuit was filed, and therefore had
"no personal knowledge of Mark Wood's allegations."

But "the federal jury has now spoken," he added. "As a lifelong law enforcement officer, I have
and will always have the utmost respect for our judges and juries."

In his statement, Anderson indicated he would seek the advice of city attorneys before deciding
whether to appeal the verdict.

"I must be frugal with taxpayers' funds and will act accordingly," Anderson said.

Wood's attorney, Richard Waples, said in closing arguments that his client lost weight and
couldn't sleep because of the pressure on him to send the statistics and the resulting suspension.

"The enthusiasm was just sucked right out of him," Waples said.

Wood joined the department on Jan. 7, 1995, and has faced no other disciplinary actions.

Sheriff's Department lawyer Robin Lybolt declined to comment after the verdict.

In closing arguments, Lybolt had said Wood's contention that he was injured was specious.

"He didn't go to a doctor, he didn't go to a counselor and he didn't even take prescription
medication," she told the jury. "If you are that stressed out, do you really not do a thing?"

11

Lybolt added that Anderson promoted Wood to captain, which came with a $6,000 raise.

She said Wood was suspended simply for failing to follow orders.

"The Sheriff's Department is a paramilitary structure, and you have to follow orders," Lybolt said. "You cannot pick and choose when to follow them."

Waples said the lawsuit was more about principle than money.

Still, the $250,000 verdict, he said, "is a reasonable amount for what he went through."

**Call Star reporter John Tuohy at (317) 444-6418.**

**Email this**    **Print this**    **Post message**        **Send letter to editor**    **Reprint info**

12

## IN THE SMALL CLAIMS COURT OF CENTER TOWNSHIP, MARION COUNTY, INDIANA

INDIANAPOLIS HOUSING AGENCY

V.                                             CAUSE : 49K10405SC003957

VINCENT SCOTT, PRO SE.

## EMERGENCY STAY REQUEST AND MOTION TO SET ASIDE DEFAULT AND RE-SET CAUSE FOR TRIAL

Today, 5-30-04, I, Vincent Scott, Defendant in this action, state under oath that I never received notice that this action for possession of real estate had been filed against me, that I never had an opportunity to respond to the notice of claim and that I believe and deny that the plaintiff has any right to possession of the property I currently hold and as a matter of right intend to retain possession of under the rental agreement between Indianapolis Housing Authority  and me. As directed by Ms. April Jackson, Community Manager of the John Barton Towers Apartments, I have escrowed all rent due and will pay it, if justice so requires. See my 5-3-04 letter to Ms. Jackson confirming escrow of rents, below.

Further, my first notice that this action had been filed and adjudged against me on 5-18-04 came to me on 5-28-04 accompanied by a letter from Ms. April Jackson, Community Manager of the John Barton Towers Apartments (a public housing residence for disabled and elderly citizens funded by the U. S. Department of Housing and Urban Development), Indianapolis Housing Authority (IHA). Ms Jackson informed me then that judgment had been entered against me by this court and that my property would

13

be removed from the apartment Tuesday 6-1-04. However, the dates on the judgement itself were illegible.

However, I never received any notice of the judgement from the Clerk of the court as required by Rule 11(A). Please notice that I also never received in my mail at 555 Massachusetts Ave a letter sent to me by the Indiana Civil Rights Commission regarding my complaint there against the IHA. That letter had to be re-sent to me at another address.

Further, there is a grievance pending against the IHA for violation of my contract and constitutional rights. The action to repossess is due, I believe, not to my failure to pay rent or to otherwise comply with the rental agreement, but to my insistence on my rights to privacy and fair treatment which IHA personnel have repeatedly denied me. In fact, I was threatened with ejectment and eviction by Ms. April Jackson when I appealed her decision to deny my objection to her demand that I waive my rights under the Federal Privacy Act and allow unlimited access to my personal, financial, business records and employments when she and IHA had no right to that information other than that information which I had previously provided voluntarily under oath. I pay full market rent for my dwelling and live there because it is handicap accessible. Further, the provisions of the rental agreement include a stay of all adverse actions during the pendency of a tenant's grievance. As well, I am legally medically permanently disabled, as the plaintiff is well aware, and I will experience hardship finding suitable and affordable lodging on short notice. That is, this is a hardship case and the plaintiff should have informed the court of my legal disability before the court entered default against me. The plaintiff falsely testified that I had been served the notice of claim, that I was under no legal disability affecting my ability to respond and that it was entitled to the property's possession. **None** of that is true in violation of Rule 10(B)(1-3). Actually, the repossession

14

action is a reprisal for my exercise of my rights to equal protection and due process.

## Injunctive Relief Requested

The court should in fact dismiss the action with prejudice as an abuse of process.

Alternatively, please set aside the default Rule 10(C)and enter an emergency stay against the imminent forcible removal of my property and me from my dwelling. No other legal remedy is available to me at this time and I will suffer severe and irreparable physical, medical, financial and mental harm unless the court acts immediately upon receipt of this letter. (42 USC 1983 injunctive relief, Americans with Disabilities Act, Equal protection and Due process Clauses, U. S. Constitution; the rules of this court and the court's inherent equity powers.). The court should also reprimand the attoney for the IHA, Ms. Chavis for filing the action without conducting a proper investigation of the true state of affairs leading to the IHA's frivolous and spiteful claim.

I also request any other relief the needs of justice may require, including, but not limited to, an order to the IHA to cease and desist from harassing me and attempting to intimidate me from pursuing my civil and constitutional rights and to allow me to quietly enjoy my dwelling as provided by contract and law (42 USC 1981).

Further, I reserve the right to pursue my counterclaims in another forum. Rule 11(E).

I affirm under oath that the foregoing is true and that I believe that I am entitled to the relief requested herein.

5-30-04

15

Respectfully Submitted,

Vincent Scott, pro se.

Mailing address
5868 E. 71st St. # 131
Indianapolis IN 46220.

## Certificate of Service

I have attempted to call the attorney for the IHA, Ms. Natalie
Chavis, but her voice mail box was full and I was unable to contact
her. She sent me a copy of her motion to move the eviction hearing
in this matter to 6-15-04 from 6-14-04, which I received 5-28-04.
That is the first correspondence I have received from Ms. Chavis.

I hereby certify that I will fax this document to the IHA attorney of
record, Ms. Natalie Chavis, at her fax number of record, delivered
a copy to the IHA via FAX and verify delivery by telephone, if
possible, no later than 6-1-04.

Respectfully Submitted,

Vincent Scott, pro se.

Mailing address
5868 E. 71st St. # 131
Indianapolis IN 46220.

## RULE 10. DISMISSAL AND DEFAULT

(A) Dismissal. If the plaintiff fails to appear at the time and place
specified for the trial, or for any continuance thereof, the court may
dismiss the action without prejudice. If a counterclaim has been
filed the court may grant judgment for the defendant after first
making an inquiry similar to that required by S.C. 10(B) in the case

of default judgments. If the claim is refiled and the plaintiff again fails to appear such claim may be dismissed with prejudice.

(B) Default. If the defendant fails to appear at the time and place specified for the trial, or for any continuance thereof, the court may enter a default judgment against him. Before default judgment is entered, the court shall examine the notice of claim and return thereof and make inquiry, under oath, of those present so as to assure the court that:

(1) Service of notice of claim was had under such circumstances as to establish a reasonable probability that the defendant received such notice.

(2) Within the knowledge of those present, the defendant is not under legal disability and has sufficient understanding to realize the nature and effect of the notice of claim.

(3) The plaintiff has a prima facie case.

After such assurance, the court may render default judgment and, upon entering such judgment, shall assess court costs against the defendant.

(C) Setting Aside Default. Upon good cause shown the court may, within one year after entering a default judgment, vacate such judgment and reschedule the hearing of the original claim. Following the expiration of one year, the judgment debtor may seek a reversal of the original judgment only upon the filing of an independent action, as provided in Ind.R.Tr.P. 60(B).

---

Vincent scott
#903 john barton towers

5-3-04

manager
john barton towers

RE: RENT ESCROW

I was told to hold all rent funds in escrow pending outcome of my grievances. Management refused payment of april, 2004 rent offered on april 7, 2004. I have not received further instructions and the rent funds are being held in escrow. I am awaiting further proceedings on my grievances and will remit when appropriate,

17

Vincent scott

# Title 42 USC Section 1981. Equal rights under the law (Right of Contract)

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) ''Make and enforce contracts'' defined

For purposes of this section, the term ''make and enforce contracts'' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

18

[Federal Register: November 26, 2003 (Volume 68, Number 228)]
[Rule and Regulations]
[DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

## 24 CFR Parts 21 and 24

Part II

Governmentwide Debarment and Suspension (Nonprocurement),
and Requirements for Drug-Free Workplace (Grants); Rules
(Final and Interim Final)

SOCIAL SECURITY ONLINE

http://www.ed.gov/legislation/FedRegister/proprule/2002-
1/012302b.html

19

## Newsbrief: No Room at the Jail for Indianapolis Marijuana Possessors 4/26/02

http://www.stopthedrugwar.org/chronicle/234/indianapolis.shtml

Judges in Marion County (Indianapolis), IN, de facto decriminalized use and possession of small amounts of marijuana on April 18. With the county corrections system facing fines for overcrowding under an order from US District Judge Sarah Evans Barker, a three-judge executive committee ordered police to quit arresting minor marijuana offenders, prostitutes and unlicensed drivers, the Indianapolis Star reported. Those minor offenders will instead be given the equivalent of traffic tickets and ordered to appear in court at a later date.

A week earlier, Judge Barker had held the county in contempt over its failure to redress overcrowding at the temporary holding facility at the City-County Complex. The jail is used to house those arrested until they face a judge for the first time or post bond. She warned that she would impose steep fines beginning May 1 for each day the facility exceeded its 297-person cap and for each inmate held longer than four days. The city violated that cap three times over the weekend of April 19-21.

The move gained the support of the Indianapolis Star, whose editorialists on Monday wrote: "Slapping marijuana smokers, shoplifters and prostitutes with summonses to appear is a reasonable alternative to hauling them to jail. Those types of offenders rarely pose an immediate threat to themselves or others. Cleaning up neighborhoods requires deeper solutions than locking up offenders for short periods of time. Nothing in the judges' order changes that fact. Community safety isn't being sacrificed, and criminals aren't being coddled. Instead, a rational solution has been applied to avert fines that would have hurt every taxpayer in the county."

Not everyone was so enlightened. Bonnie Dotts, president of the We Care Neighborhood Association, a group that has attempted to rid the Washington Street and Belmont Avenue area of prostitutes and drug users, compared the beneficiaries of the move to insects. "These bugs on the streets are going to have a joyous day," Dotts told the Star. "It may be the answer for them Downtown, but it's another problem for the neighborhoods."

**-- END --**

**Please make a generous donation to support *Drug War Chronicle* in 2005!**

Check Out Our
Cool
Membership
Gifts!



**Issue #234, 4/26/02** Editorial: Cocaine Legalization | California Medical Marijuana Movement Awaits Federal Offensive, Plots Strategy | Member of British Parliament Calls for Legalization of Cocaine | Amnesty International USA Approves Resolution to Examine Link Between Drug War and Human Rights Abuses | NORML Conference Report: Ready to Take It to a Higher Level | Three US Medical Marijuana Refugees Detained in British Colombia | Newsbrief: Colombian Rebels Seize Pro-Legalization Governor | Newsbrief: Man Without Guns or Drugs Killed By Long Island Cops on Marijuana Raid | Newsbrief: Bicycle Courier Race Shows NYC Day in the Life in the Drug War | Newsbrief: Oregon Medical Marijuana Doctor Suspended, Fined, Put on Probation | Newsbrief: No Room at the Jail for Indianapolis Marijuana Possessors | Newsbrief: Britain's New Scientist Slams Ecstasy Alarmists | Alerts: HEA, Bolivia, DEA Hemp Ban, SuperBowl Ad, Ecstasy Legislation, Mandatory Minimums, Medical Marijuana | The Reformer's Calendar

Mail this article to a friend
Send us feedback on this article
**This issue -- main page**
**This issue -- single-file printer version**
**Drug War Chronicle -- main page**
**Chronicle archives**
**Subscribe now!** PERMISSION to reprint or redistribute any or all of the contents of *Drug War Chronicle* (formerly The Week Online with DRCNet) is hereby granted. We ask that any use of these materials include proper credit and, where appropriate, a link to one or more of our web sites. If your publication customarily pays for publication, DRCNet

requests checks payable to the organization. If your publication does not pay for materials, you are free to use the materials gratis. In all cases, we request notification for our records, including physical copies where material has appeared in print. Contact: StoptheDrugWar.org: the Drug Reform Coordination Network, P.O. Box 18402, Washington, DC 20036, (202) 293-8340 (voice), (202) 293-8344 (fax), e-mail drcnet@drcnet.org. Thank you.

Articles of a purely educational nature in *Drug War Chronicle* appear courtesy of the DRCNet Foundation, unless otherwise noted.

21

## Certificate of Service

**I WILL SERVE the HUD secretary by mail with proper
postage attached within three days of today 6/13/05 at his offices.**

OFFICE OF THE SECRETARY
 U.S. Department of Housing and Urban Development
 451 7th Street S.W.,
 Washington, DC 20410

*Scott*

**Vincent Scott, pro se
5868 E. 71st St # 131
Indianapolis In 4622**

22